**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **MELANIE B.,** as Parent/Guardian/Next Friend of W.B., a Minor Individual with a Disability | § § § § | |
| **V.** | § § | **NO. 1:17-CV-438-LY** |
| **GEORGETOWN INDEPENDENT SCHOOL DISTRICT** | § § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before this Court are Plaintiff's Motion for Judgment on the Administrative Record and for Partial Summary Judgment (Dkt. No. 38), Defendant's Response (Dkt. No. 49), and Plaintiff's Reply (Dkt. No. 54); and Defendant's Motion for Summary Judgment (Dkt. No. 39), Plaintiff's Response (Dkt. No. 47), and Defendant's Reply (Dkt. No. 55). The District Court referred the above motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

Melanie B. (M.B.), as Parent/Guardian/Next Friend of minor W.B., brings this suit against Georgetown Independent School District (GISD) to request attorney's fees following the decision of a Special Education Hearing Officer (SEHO). GISD counterclaimed seeking to overturn the SEHO's decision.

W.B., at the time of the administrative hearing, was a seventh grade student at Fusion Academy. AR 8.[1] W.B. attended elementary school in the Jarrell Independent School District from kindergarten until the first half of fifth grade. *Id.* Throughout his education, W.B. has exhibited behavioral difficulties. *Id.* W.B. began receiving special education services in Jarrell ISD, as a and was identified as having an Emotional Disturbance (ED) and Attention Deficit-Hyperactivity Disorder (ADHD), as well as dyslexia. *Id.* W.B. moved to GISD halfway through his fifth grade year, after attending two charter schools for several weeks. AR 9. After he transferred in February 2015, GISD convened an Admission, Review, and Dismissal (ARD)[2] meeting, which produced an Individualized Education Program for a mix of general education classes with accommodations and special education services, such as a Behavior Intervention Plan, social skills training, and dyslexia services. AR 10. He was also given behavioral support through the Positive Approach to Student Success program. *Id.* The PASS program monitors students in general education classes, and

---

[1]Cites throughout this opinion will be to the Administrative Record (AR) or the Transcript (Tr.). The Administrative Record and Transcript were filed under seal, and are contained in the exhibits to Dkt. No. 30.

[2]There are almost as many abbreviations in this area of the law as in the military. These are the ones used throughout this opinion:

ABA: Applied Behavior Analysis
BIP: Behavior Intervention Plan
FAPE: Free Appropriate Public Education
FBA: Functional Behavioral Assessment
FIE: Full Individual Evaluation
IEE: Independent Educational Evaluation
IEP: Individualized Education Program
LRE: Least Restrictive Environment
LSSP: Licensed Specialist in School Psychology
PASS: Positive Approach to Student Success
RTF: Residential Treatment Facility

removes students to the PASS classroom when appropriate. *Id.* At subsequent ARDs, W.B.'s IEP was reviewed, and GISD and W.B.'s parents agreed to continue with the current plan. AR 10–11. Additionally, a Functional Behavior Assessment was ordered. AR 10–11.

Beginning in sixth grade, W.B. had difficulty adjusting, so GISD convened a new ARD meeting on October 14, 2015, to address the concerns. AR 12. W.B. was unable to complete his work, was off-task frequently, and used inappropriate language. *Id.* Additionally, as the year wore on, "elopement" (leaving, or attempting to leave, the classroom), screaming at the staff, and inappropriate language escalated. AR 12–13. The ARD convened again in March 2016 to discuss changes to the IEP. AR 14. M.B. had expressed concerns over W.B.'s placement in the PASS room, so GISD proposed using an "Individual Intensive Redirection Room" (Redirection Room). *Id.* The ARD then set up two schedules: one in which W.B. would attend all general education classes, and one with special education classes. *Id.* W.B. began each day in the Redirection Room, and could earn time in general education classes through the accumulation of points for appropriate behavior. *Id.* On March 28, 2016, GISD held the annual ARD meeting, and adopted an IEP with accommodations to address W.B.'s reading, writing, and attention deficits. AR 14–15.

W.B.'s parents then filed a due process hearing request based on concerns from the program implemented at the prior meetings. AR 16. On April 7, 2016, the parties reached a settlement agreement resolving these claims. *Id.* The settlement agreement also provided a number of educational services for the remainder of the 2015-2016 school year, including Applied Behavioral Analysis services. *Id.* The IEP established at the March 28, 2016 ARD meeting was continued for the remainder of the school year. *Id.* M.B. attended an ARD meeting on May 26, 2016, but did not agree with the IEP at that time, and the ARD convened again on June 13. AR 16, 20–21. Finally,

W.B.'s parents notified GISD on August 12, 2016, that they disagreed with the June 13 ARD decisions. AR 21.

Upon beginning seventh grade, W.B. remained in the same program. AR 21. However, after twelve days at school, nine of which W.B. remained exclusively in the Redirection Room, M.B. withdrew W.B. from GISD. AR 769–70. The District held two ARD meetings, one on September 7 (in which GISD continued its recommendation), and one on September 27. AR 22–23. At the second ARD, GISD recommended placement in a residential treatment facility (RTF) or a therapeutic day treatment center. *Id.* M.B. refused to consider these options, and suggested Fusion as an alternative. *Id.* GISD rejected M.B.'s proposal. *Id.* M.B. then enrolled W.B. at Fusion, and filed the due process hearing request, seeking tuition reimbursement. *Id.* The parties once again met on November 3, 2016, for an ARD meeting, but were unable to come to an agreement. AR 23–24.

A due process hearing was held on January 24-26, 2017, and the SEHO issued her opinion on April 10, 2017. The SEHO found that (1) GISD had failed to provide a free appropriate public education to W.B., (2) Fusion was an appropriate private placement, and (3) W.B. was entitled to tuition reimbursement for the 2016-2017 school year. AR 43–44. The SEHO additionally ordered reimbursement for (1) the private psychological assessment obtained by W.B.'s parents, (2) outside P.E. costs, and (3) individual counseling for the remainder of the 2016-2017 school year. AR 44-45. Following the favorable decision from the SEHO, M.B. filed suit seeking attorney's fees under 20 U.S.C. § 1415(i)(3)(B). GISD counterclaimed challenging the SEHO decision, and M.B. filed additional counterclaims seeking transportation costs and continued placement for W.B. at Fusion.

GISD now seeks summary judgment on its claims seeking to reversal of the SEHO's decision. M.B. also seeks a judgment, but she asks the Court to affirm the decision, except to the

extent it denied transportation costs, on which she seeks reversal. She also seeks summary judgment on her attorney's fees request.

## II. LEGAL STANDARD

The IDEA was enacted to ensure that "[a] free appropriate public education is available to all children with disabilities." 20 U.S.C. § 1412(a)(1)(A). A child's free appropriate public education "must be tailored to his particular needs by means of an 'individual educational program'" and "assure that such education is offered, to the greatest extent possible, in the educational 'mainstream,' that is, side by side with non-disabled children, in the least restrictive environment consistent with the disabled student's needs." *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 (5th Cir. 1997). The FAPE "need not be the best possible one, nor one that will maximize the child's educational potential; rather, it need only be an education that is specifically designed to meet the child's unique needs, supported by services that will permit him 'to benefit' from the instruction." *Id.* It "guarantees only a 'basic floor of opportunity.'" *Id.* However, "the educational benefit 'cannot be a mere modicum or *de minimus*; rather, an IEP must be likely to produce progress, not regression or trivial educational placement.'" *Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 292 (5th Cir. 2009) (quoting *id.* at 248). In Texas, an Admission, Review, and Dismissal committee prepares a student's IEP. *S.H. ex rel. A.H. v. Plano Indep. Sch. Dist.*, 487 F. App'x 850 (5th Cir. 2012).

Under the Individuals with Disabilities Education Act, any party aggrieved by a decision of a Special Education Hearing Officer has the right to appeal the decision to the district court. 20 U.S.C. § 1415(i)(1)(A). On appeal, "the Court shall: (1) receive the records of the administrative proceedings; (2) hear additional evidence at the request of the party; and (3) grant such relief as it

determines appropriate based upon the preponderance of the evidence." *Z.C. v. Killeen Indep. Sch. Dist.*, 2015 WL 11123347, at *5 (W.D. Tex. Feb. 17, 2015) (citing 20 U.S.C. § 1415(i)(2)(C)). Though nominally a motion for summary judgment, an IDEA appeal "essentially asks the Court to decide the case based on the administrative record." *Caldwell Indep. Sch. Dist. v. L.P.*, 994 F. Supp. 2d 811, 817 (W.D. Tex. 2012). The SEHO's "findings should be accorded 'due weight,' but the district court must arrive at an independent conclusion based on a preponderance of the evidence." *Id.* (quoting *Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir. 2003)). Thus, "a federal district court's review of a state hearing officer's decision is 'virtually de novo.'" *Id.* On the other hand, "[t]he IDEA creates a presumption in favor of a school district's educational plan, placing the burden of proof, by preponderance of the evidence, on the party challenging it." *R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1010–11 (5th Cir. 2010). The court's "task is not to second guess state and local policy decisions; rather it is the narrow one of determining whether state and local officials have complied with the Act." *White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 377 (5th Cir. 2003) (quoting *Flour Bluff Indep. Sch. Dist. v. Katherine M.*, 91 F.3d 689, 693 (5th Cir. 1996)).

In general, summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is

required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### III. ANALYSIS

The Court will first address the SEHO's decision and M.B.'s counterclaims before moving to the final question of attorney's fees.

## A.    SEHO Decision

Where a school district fails to provide a FAPE to a child, parents may unilaterally place the child in a private school and then seek tuition reimbursement.  *R.H. v. Plano*, 607 F.3d at 1011.  To receive reimbursement, the plaintiff must show that "(1) an IEP calling for placement in a public school was inappropriate under IDEA, and (2) the private placement was appropriate under the Act." *Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 293 (5th Cir. 2009). The SEHO found in this case that GISD failed to provide a FAPE to W.B., and that Fusion was an appropriate unilateral private placement, entitling M.B. to tuition reimbursement for the 2016-2017 school year.  GISD challenges these findings, arguing that the IEP was reasonably calculated, or, in the alternative, that Fusion is not appropriate.

### 1.    Settlement Agreement

As an initial matter, GISD contends that the SEHO improperly considered the Spring 2016 IEP.  On April 7, 2016, GISD and M.B. signed a settlement agreement, in which M.B. agreed to the IEP and released any claims against GISD under IDEA.  The agreement related to any events that occurred prior to that date, and required GISD to provide certain services.  GISD argues that the SEHO improperly considered the Spring 2016 IEP when determining that GISD failed to provide a FAPE to W.B., and that the decision should therefore be reversed.  While M.B. clearly released claims against GISD that, prior to the date of the settlement agreement it had failed to provide a FAPE to W.B., that release did not address the instant claim:  whether GISD provided a FAPE to W.B. after that date, and whether M.B. is entitled to reimbursement for the tuition costs for Fusion.  To determine whether GISD was providing a FAPE to W.B. for the 2016-2017 school year, the SEHO was required to consider the IEP applied at the time.  This was the IEP developed prior to the

settlement agreement, and then reurged at the multiple ARD meetings following this agreement. Therefore, GISD's argument that the SEHO improperly considered the Spring 2016 IEP fails.

### 2. Appropriateness of IEP

To determine whether the IEP was appropriate, the court looks to whether (1) "the state complied with the procedural requirements of IDEA," and (2) the IEP was "reasonably calculated to enable the child to receive educational benefits." *Id.* Here, M.B. does not assert (nor did the SEHO find) any deficiencies in the process. Accordingly, the Court moves to the second step of the analysis. A court looks to four factors to determine whether the IEP was reasonably calculated:

> (1) Is the program individualized on the basis of the student's assessment and performance; (2) is the program administered in the least restrictive environment; (3) are the services provided in a coordinated and collaborative manner by the key 'stakeholders'; and (4) are positive academic and non-academic benefits demonstrated?

*R.H. v. Plano*, 607 F.3d at 1012. "[T]hese factors are 'indicators' of an IEP's appropriateness" and are only "intended to guide a district court in the fact-intensive inquiry of evaluating whether an IEP provided an educational benefit." *Michael Z.*, 580 F.3d at 294. The SEHO found that the second and fourth factors both weighed against the IEP. GISD challenges these findings, and M.B. moves to affirm the decision. The Court agrees with the SEHO that GISD failed to provide with a FAPE, as required under IDEA.

The SEHO found that the first and third factors supported acceptance of the IEP. Neither party challenges this finding. The record clearly supports these findings. The plan was individualized on the basis of W.B.'s performance and assessments. When W.B. enrolled in GISD in February 2015, he was given special education support services, including a BIP, social skills training, and dyslexia services. AR 10. Then, in the spring of 2016, GISD arranged for a FBA and

FIE to assess W.B.'s needs. AR 3110-12, 1720. Additionally, the services were provided in a coordinated and collaborative manner. The parents were involved at each step, with numerous ARD meetings to assess W.B.'s progress and make recommendations for changes. *See, e.g.*, AR 1854-60, 1995-2007, 2008-13, 2023-24, 2038-44. The Court will therefore focus of the second and fourth elements.

### a.    Least Restrictive Environment

The Court agrees with the SEHO that the IEP was not applied in the least restrictive environment. This factor uses a two-part test. The court first asks "whether education in the regular classroom, with the use of supplemental aids and services can be achieved satisfactorily for a given child." *R.H.*, 607 F.3d at 1013 (citing *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1048 (5th Cir. 1989)). If the child cannot be educated in the regular classroom, the second question is "whether the school has mainstreamed the child to the maximum extent appropriate." *Id.* W.B. was originally scheduled to be served in a combination of general and special education classes. *See, e.g.*, AR 1115 (setting a schedule for W.B. in general education, with a secondary setting in special education when he exhibits disruptive behaviors). However, beginning in March 2016, the IEP indicated that W.B. would begin the school day in the Redirection Room. AR 1072; Tr. 279 (noting that W.B. had two schedules, one in the Redirection Room, but the option to enter general education); *cf.* AR 801–02 (noting that W.B.'s needs cannot be met in general education classroom). The Redirection Room provided for a 2:1 special education instructional setting, with a special education teacher and an aide. AR 2540; Tr. 278. Once W.B. was able to meet sufficient behavioral criteria, he would have the opportunity to move to core general education classes on a class-by-class basis. AR 1074; Tr. 263; *see also* AR 1116–17 (recommending this arrangement at the March 3, 2016 ARD meeting).

The remainder of the spring semester found W.B. increasingly remaining in the Redirection Room due to his maladaptive behaviors.[3] When he began in the Fall 2016, W.B. remained in the Redirection Room for nearly the entire time he was enrolled at GISD.[4] He was not permitted to attend general education classes or lunch with his classmates, but remained in the Redirection Room.[5] The IEP provided a series of incentives for W.B., including the ability to leave the Redirection Room, but during the time he remained at GISD in the fall, W.B. rarely attended a general education class.[6] Moreover, during the period he remained in the Redirection Room, the teacher and aide were forced to remove various pieces of furniture for W.B.'s safety.[7] These behaviors only increased for the period in which he remained in the Redirection Room, to the point that he was not attending any mainstream classes or activities.[8]

The SEHO found, and this Court concurs, that this approach did not provide W.B. an education in the least restrictive environment. GISD argues that W.B. was given the opportunity to

---

[3]*See, e.g.*, AR 820, 1022 (noting that W.B. was offered the option to leave the Redirection Room, but did not choose to do so); AR 1014–18 (showing tallies of W.B.'s maladaptive behaviors for May 2–3, 2016); AR 1024–25 (noting that W.B. eats lunch in the Redirection Room); AR 1073 (describing W.B.'s maladaptive behaviors).

[4]*See, e.g.*, AR 826; AR 2192–2223 (providing logs of daily activities as well as tallies and descriptions of unsafe behavior, physical outbursts, and verbal outbursts during Fall 2016).

[5]AR 2198, 2206, 2215; Tr. 120.

[6]*See* AR 2192–2223 (providing a daily account of W.B.'s actions); Tr. 118 (testifying that W.B. was in the Redirection Room for nine days in the fall); AR 2206 (listing incentives, including education in general education classes).

[7]*See, e.g.*, AR 2121–22, 2131, 2138, 2198–99, & 2215; Tr. 120.

[8]AR 2023–24 (describing his increasingly maladaptive behaviors in the Fall 2016, including explicit language, suicidal threats, and aggressive behaviors); AR 2119–21, 2130–35, 2137–41, 2164–85 (providing a log of W.B.'s activities on various days in April and May 2016).

leave the Redirection Room if he chose, pointing out that the IEP provided for incentives to return to general education classes once he reached certain behavioral benchmarks.[9]  However, it is clear from the evidence that W.B.'s behavior deteriorated while he was kept in the Redirection Room, and that he demonstrated the ability to behave appropriately in a more mainstreamed environment.[10]  Thus, the IEP providing placement in the Redirection Room was not the least restrictive environment.

As further evidence, during W.B.'s time at Fusion he has shown the ability to adequately interact with his peers.[11]  There, though the classes are 1:1, after each class, he attends the "Homework Café" where he interacts with other students, both socially and for specific projects for class. Tr. 207–08.  W.B. had a few incidents when he first began at Fusion, but staff reports that his behaviors have not regressed to the extent they did when he was in the Redirection Room.  Tr. 205–06; Tr. 153–55.  Instead, W.B. has maintained the ability to interact with his classmates in the Homework Café, and has continued to progress.  Tr. 152–56.

---

[9]Dkt. No. 39 at 11; AR 2206. According to GISD, W.B. chose not to take advantage of these opportunities.  *See* AR 820, 1022; Tr. 534 (stating that W.B. refused to do work that would have earned him time in general education classes).

[10]*See* AR 2192–2223 (tracking W.B.'s behaviors in the Redirection Room in Fall 2016); AR 1024 (confirming that W.B.'s behaviors were better in a general education setting); Tr. 437 (testifying that W.B. behaved in his social studies class).

[11]Tr. 156 (stating that W.B. had not had any episodes of eloping, screaming, or physically aggressive outbursts while at Fusion); Tr. 154–55 ("The one thing I've noticed with [W.B.] is when we have these direct conversations with him, we rarely see the same behavior in that sense again, meaning I have not heard him use that F word in a couple of months."); Tr. 206 (testifying to W.B.'s improvement while at Fusion); Tr. 617 (stating that W.B. had no maladaptive behaviors during the time he was observed at Fusion).

### b. Academic and Non-Academic Benefits

The SEHO also found that the IEP was not reasonably calculated to offer academic and non-academic benefits. The evidence supports this conclusion. First, during his time in the Redirection Room, W.B. was unable to complete most of his work, due mainly to his maladaptive behaviors.[12] In particular, the logs for the short period in which W.B. was enrolled at GISD in Fall 2016 show that the teacher and aide were unable to get W.B. to focus on any work.[13] In Spring 2016, W.B. was able to complete some work, focusing in short increments with the incentives planned by his IEP, but this deteriorated the longer he remained.[14] Moreover, W.B. did not meet his benchmarks for that semester and was failing his standardized assessments, though he had passed in previous years.[15] Thus, this placement was not reasonably calculated to confer any academic benefits.

Nor did W.B. receive any non-academic benefits while in the Redirection Room. As evidenced above, W.B.'s behavior escalated while he was isolated, and he was not permitted to be around his peers.[16] He did not attend lunch or any field trips.[17] He received therapy during his time in the Redirection Room, but his behaviors continued to escalate. Tr. 462. Indeed, GISD appeared

---

[12]Tr. 273 (noting that W.B. would tear up his homework); Tr. 540 ("Q: You indicated that [W.B.] didn't complete work. A: That's correct."); AR 1024 (stating that W.B. refused to do any work on multiple days while in the Redirection Room). *But see* Tr. 265–67 (testifying that W.B. participated on his theater project, and asked to go to P.E.).

[13]AR 2192–2223.

[14]*See, e.g.*, Tr. 264; AR 2055, 2060, 2062, 2067 (showing times that W.B. earned incentives); AR 826 (describing that after the first three days in the fall, W.B.'s behavior deteriorated).

[15]Tr. 295; AR 773.

[16]*See* AR 1014–18, 2192–2223.

[17]AR 2198; AR 1438–43.

to recognize this, as during the September 27, 2016 ARD meeting, the administrators recommended a residential treatment facility or therapeutic day treatment center, as opposed to returning to the Redirection Room.[18]  Taken together, the IEP calling for placement in the Redirection Room was not reasonably calculated to offer academic or non-academic benefits on W.B.

### c.   GISD's Proposed Placement

Similarly, GISD's proposed placement in either a Residential Treatment Facility or a therapeutic day treatment center is not appropriate.  GISD offered three RTF's and two therapeutic day treatment centers at the September 27, 2016 ARD meeting.  AR 739.  However, an RTF is the most restrictive environment to be considered.  19 TEX. ADMIN. CODE § 89.63(c)(10).  "In order for a residential placement to be appropriate under IDEA, the placement must be 1) essential in order for the disabled child to receive a meaningful educational benefit, and 2) primarily oriented toward enabling the child to obtain an education."  *Michael Z.*, 580 F.3d at 299.  As noted above, W.B.'s apparent ability to succeed at Fusion, and his ability to interact appropriately with his peers, indicates that an RTF or day treatment center are not essential for W.B. to receive an educational benefit.[19] W.B. has shown fewer outbursts and no episodes of eloping.  Tr. 153-56.  He has proceeded in his

---

[18]AR 739 (rejecting continued placement in the Redirection Room and recommending a RTF).

[19]GISD objects to the SEHO's consideration of such factors as proximity to home, church, and equine facilities.  However, *White v. Ascension Parish Sch. Bd.*, 343 F.3d 373 (5th Cir. 2003), cited by GISD, addressed a different question, namely whether GISD could reject placement at a neighborhood school, even where the IEP could be implemented.  This is different from considering the distance that a child must go to attend a day treatment center or RTF, or the effects of losing extracurricular activities as part of the least restrictive environment analysis. *Cf.* Tr. 871 ("It's hard to do a day treatment program too far geographically out.").

studies, showing an ability to focus and perform the work assigned.[20] Moreover, he has been interacting with his peers, with few incidents.[21] All of this indicates that the more restrictive environment of an RTF is not essential to W.B. to receive an educational benefit.

Nor is there evidence that a therapeutic day treatment center is the least restrictive environment in which W.B. can receive an educational benefit. This is especially so in light of the distance of the RTF from W.B.'s home, which is further than Fusion is from W.B.'s home.[22] The SEHO also considered the fact that GISD made the decision to use the Redirection Room only nine days into the school year, without fully implementing the revised IEP—which included dyslexia services, the opportunity to type rather than write, and ABA therapy.[23] Of course, M.B. pulled W.B. out of school at this time due to his experiences in the Redirection Room. AR 769-70. Yet, the proposed placement in an RTF or day treatment center was significantly more restrictive, and did not give the additional IEP services the opportunity to work. It also failed to consider other options, such as Fusion.[24]

---

[20]Tr. 199 (testifying that W.B. is "fully engaged" in his science lessons); AR 906–08 (describing W.B.'s progress over the semester).

[21]Tr. 153-56, 159; Tr. 205-06.

[22]AR 38; Tr. 570 (providing examples of day treatment centers in Belton and near San Marcos).

[23]*See* AR 825, 827 (describing in the September 7, 2016 ARD meeting that the current IEP should be implemented and that W.B. was making progress); AR 740 (rejecting the previous IEP on September 27, and recommending placement in the RTF or day treatment center).

[24]*Cf.* AR 39 ("It is difficult to reconcile the school district's position in the spring and summer of 2016 up through September 7, 2016 with the recommendation for a much more restrictive placement on September 27, 2016.").

It is more difficult to assess the academic and non-academic benefits that an RTF or day treatment center would offer, as GISD had not fully investigated which of the five options would be best suited for W.B.[25]   GISD is correct in noting that the parents did not give permission to GISD to share W.B.'s information with the facilities, and the parents refused to visit any of the proposed placements.  Tr. 567; AR 740.  However, even as of the time of the administrative hearing, GISD still had not formed an opinion on whether any of the five options would be suited for W.B. or would accept him. Tr. 71-76, 563-64.  Nor had a representative visited the placement options.  Tr. 76. Without this information, determining whether the specific programs would offer academic or non-academic benefits is difficult.   Moreover, as noted above, GISD has not shown that a more therapeutic environment is essential for W.B. to receive a meaningful educational benefit.

### 3.    Private School Placement

The second prong of the analysis related to deciding whether tuition may be reimbursed requires the Court to assess whether the unilateral private school placement was appropriate. "[P]arents are not barred from reimbursement because the private school did not meet the precise IDEA definition of a free appropriate public education, because IDEA requirements 'cannot be read as applying to parental placements.'" *Michael Z.*, 580 F.3d at 295 (quoting *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 13 (1993)).  Thus, "reimbursement would be permitted if [W.B.'s] education there was 'otherwise proper' under the IDEA." *Id.*  In other words ,there is no requirement that the unilateral placement "be the exact proper placement required under the Act." *Id.* (quoting *Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ.*, 790 F.2d 1153,1161 (5th Cir. 1986)).

---

[25]AR 37-38; Tr. 67-76; *see also* Tr. 570 (testifying that the day treatment centers were found by the TEA approved list and a "general query" of facilities in the area); Tr. 564 ("I have not applied for [W.B.] to attend a specific residential facility.").

The record supports the conclusion that Fusion is an appropriate private placement. To begin with, Fusion offers a 1:1 instructional arrangement for each of W.B.'s classes. Tr. 142. Fusion's classes are separated into two schedules, A days and B days, with Friday being a day to do catch-up work. Tr. 143. These classes are taught in accordance with Texas' state-mandated curriculum, the TEKS, and though the teachers are not certified, each has at least a Bachelor's degree in the field they teach, with a preference for a Master's degree. Tr. 182, 186. Fusion is AdvancED accredited, though it is not accredited by TEA. Tr. 181. The school does not follow a research-based curriculum, however each class is tailored to the student's needs. *E.g.*, AR 832; Tr. 199. The teachers employ a "hands on" method to engage W.B. in classes, and the lessons are adapted to W.B.'s learning styles and interests, while still remaining on TEKS teaching curriculum. Tr. 199, 208-0. In addition, due to the 1:1 structure, W.B.'s teachers are able to focus on mentoring W.B., such as with his organizational or life skills. Tr. 212; AR 833 & 843. Under this structure, W.B. has shown that he is able to focus, and has demonstrated advancement in school performance. Tr. 158 (showing improvement in writing skills); Tr. 203-04. GISD maintains that W.B. is not being challenged at Fusion. *See* Tr. 557 ("I don't feel that he was ever asked to really be independent in any of the tasks he was completing."). However, it is clear from the records from Fusion that W.B. is progressing in his studies at Fusion. Finally, though there are no STAAR tests available to show his progress, his grades and teachers' reports from this period indicate that W.B. has continued to progress in his studies and has shown improvement in a number of skills. *Id.*; Tr. 182–83;. This shows that he is receiving academic benefits.

Similarly, W.B. has received non-academic benefits from his time at Fusion. Fusion offers a social Homework Café that the students attend between each of their classes. Tr. 143. This time

can be used to do homework or to socialize with the other students. *Id.* Though W.B.'s time at Fusion has not been without incidents, these incidents have been far fewer and less severe than the incidents that occurred when W.B. was in the Redirection Room. He has had several incidents with inappropriate language with his teachers, and has shown some off-task behaviors. *E.g.*, AR 831, 833, 837, 2226. However, at the same time, the incidents have become fewer, and are handled on an individual level. AR 2227–28, Tr. 205–06. Nor has W.B. eloped or engaged in unsafe behaviors, like the types exhibited at Forbes or in the Redirection Room. Tr. 153–56. The incidents have interfered less with his ability to perform his schoolwork, and he has maintained A's and B's in all of his classes. AR 873, 910. Further, W.B. is not currently attending counseling at Fusion, but a licensed counselor is available should the school and W.B.'s parents decide it would be beneficial. Tr. 151; *cf.* Tr. 385 (stating that M.B. is open to counseling for W.B.). Even without counseling, W.B.'s behaviors have improved and the number and severity of outbursts and unsafe behaviors have reduced. Though the teachers are not certified in CPI or suicide intervention/prevention training, there is a counselor that is on campus, and the staff has gone through training provided by Fusion. Tr. 175–76, 186.

Finally, W.B. has shown an ability to remain with his peers during Homework Café, and even to attend an after-school event with the other students. Tr. 205–06; Tr. 160. Again, W.B. has had a few instances of inappropriate language with other students, including one incident in which he threw a pencil at another student. Tr. 231. However, W.B. has shown fewer disruptive behaviors, and teachers and administrators report that W.B. has responded well to the interventions they

imposed each time an event occurred.  Tr. 153–56.  This evidence supports a finding that Fusion is

the least restrictive environment, and is appropriate for W.B.[26]

### 4.  Equitable Considerations

GISD further argues that reimbursement should be denied or at least reduced under 34 C.F.R.

§ 300.148(d)(2) & (3).  This provision allows a court to limit reimbursement when: (1) the parents

fail to inform the IEP team that they are rejecting the proposed placement at the most recent IEP

meeting or without written notice at least ten days prior to the removal of the student; (2) the parents

fail to make the child available for evaluation, after notice by the public school; or (3) "[u]pon a

judicial finding of unreasonableness with respect to actions taken by the parents."  *Id.*  GISD argues

that W.B.'s parents acted unreasonably when they failed to consider the proposed placements in an

RTF or therapeutic day treatment center, and failed to encourage cooperation between Fusion and

GISD for the purposes of determining the appropriateness of the private placement.  Dkt. No. 49 at

13.  Therefore, GISD argues, reimbursement should be barred for unreasonable behavior.

The Court disagrees.  It is true that M.B. refused to consider any of the proposed RTFs or day

treatment centers.  However, in light of the SEHO's findings, and this Court's own review of the

same question, M.B.'s refusal was not unreasonable.  The proposed placements by GISD were

inappropriate for W.B., and M.B. was within her rights to refuse to consider these options.

Moreover, M.B.'s failure to facilitate cooperation between Fusion and GISD is not unreasonable.

M.B. was not someone who "ha[d] not first given the public school a good faith opportunity to meet

---

[26]The SEHO additionally granted outside P.E. services for $600 each semester, reimbursement at $2,200 for the cost of the private psychological assessment, and counseling services for one hour per week.  Each of these was related to the decision that Fusion is appropriate for W.B., and GISD did not specifically seek to overturn any of the above awards. Therefore, these decisions should likewise be affirmed.

its obligations." *Rockwall Indep. Sch. Dist. v. M.C.*, 816 F.3d 329, 339–40 (5th Cir. 2016). Instead, M.B. had participated in a number of ARD meetings prior to the decision to remove W.B. from public school.[27] She had engaged in the ARD meetings, providing input and suggestions, even coming to a settlement with GISD regarding the first part of Spring 2016. *Id.* In addition, she asked GISD at the September 27, 2016 meeting to consider Fusion, prior to her decision to remove W.B. AR 740. Instead, the school district continued to move forward with the other proposed placements, even continuing to push for these options at the November 3, 2016 ARD meeting—a meeting which M.B. also attended. AR 2039-41. At that meeting, M.B. clarified that she had researched the options, and even visited one of the proposed placements, though she did not believe they were a good option for W.B. AR 2040; Tr. 391-92. This is not a case where the parents refused to discuss or cooperate with the school district. Instead, M.B. continued to communicate and work with GISD throughout the process. Tr. 423 (offering to provide consent for a visit at Fusion from GISD). M.B. did not act unreasonably, and the requested reimbursement should not be limited.

### 5. Continued Placement

In her appeal, M.B. also seeks approval of the continued placement of W.B, at Fusion for the remainder of his education.[28] The request has two parts. The first seeks placement during the soon-to-end 2017-2018 school year, and the second seeks continued placement "so long as it is appropriate for [W.B.], without the necessity of a return to a due process hearing to determine same." Dkt. No. 9 at 5-6. GISD seeks summary judgment on this claim, arguing that it has not been administratively

---

[27] *See, e.g.*, AR 089, 817, 824, 2023;Tr. 395 ("I would say that I've never missed an ARD meeting in his entire school history.").

[28] M.B. also pleads that Fusion is the pendency, or "stay-put" placement for W.B. during the pendency of any appeals under 20 U.S.C. § 1415(j).

exhausted. In response, M.B. contends that the district court has broad discretion in fashioning remedies for IDEA violations, and a claim for continued placement need not be exhausted. M.B. also points to the stay put provision, arguing that W.B. is entitled to this protection.

The first request, for placement during the 2017-2018 school year, is essentially resolved pursuant to the pendency provision pled by M.B. under 20 U.S.C. §1415(j). As recognized by the Supreme Court:

> an administrative decision in favor of parents who had placed their child in a private school after they rejected a proposed IEP constitutes an agreement by the state to the change of the child's placement, making the new, private school placement the current educational placement of the child.

*Houston Indep. Sch. Dist. v. V.P.*, 582 F.3d 576, 591 (5th Cir. 2009) (citing *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 371–72 (1985)). The SEHO's decision of April 10, 2017, constitutes an agreement between GISD and W.B.'s parents that Fusion is the appropriate placement for W.B. Accordingly, the location at which W.B. is entitled to "stay-put" during the pendency of any appeals is Fusion. GISD does not argue that W.B. is not entitled to pendency placement, focusing instead on the request for "continued, indefinite placement." Dkt. No. 49 at 15. Accordingly, pursuant to the stay put provision—and this Court's recommendation to affirm the SEHO's decision— W.B. is entitled to reimbursement for Fusion tuition for the 2017-2018 school year. *See id.* at 595 (finding that the child's "parents were entitled to have their costs at the [private school] reimbursement").

However, W.B.'s request for continued placement on the merits has not been administratively exhausted and should be dismissed. The IDEA authorizes a district court reviewing an administrative decision to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii).

Courts have held that a "district court [is] free to fashion appropriate relief for [the child] regardless of the options offered in the discussion of the administrative law judge." *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1285 (11th Cir. 2008). However, the statute also requires parents seeking relief under the Act to exhaust their administrative remedies prior to filing suit in federal court, unless exhaustion would be futile or inadequate. *Gardner v. School Bd. Caddo Parish*, 958 F.2d 108, 111 (5th Cir. 1992) (citing 20 U.S.C. § 1415(b)(1)(E)). Requiring exhaustion

> allows states and local agencies to employ their educational expertise, affords full exploration of technical educational issues, furthers development of a complete factual record and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

*Wood v. Katy Indep. Sch. Dist.*, 2010 WL 11417849, at *3 (S.D. Tex. Sept. 27, 2010) (quoting *Hope v. Cortines*, 872 F. Supp. 14, 17 (E.D.N.Y. 1995)). Here, GISD argues that W.B.'s claim for continued placement is not appropriately before this Court because W.B. has not exhausted his remedies on this claim.

Though M.B. is correct in noting that a district court has broad discretion in fashioning a remedy, M.B. is not merely seeking an additional remedy for a claim already decided; she is essentially asking this Court to decide an issue that was not before the SEHO. Here, the SEHO did not address whether Fusion was the appropriate placement for the remainder of W.B.'s education; she only looked to whether it was appropriate for the 2016-17 school year. In fact, the SEHO ordered M.B. to "facilitate an ARD meeting with the school district . . . and ensure participation of Fusion teaching and administrative staff in the ARD for the purpose of reviewing [W.B.'s] progress both academically and behaviorally." AR 45. To resolve this issue, the Court would have to consider completely new evidence, grant GISD the opportunity to evaluate W.B., and potentially

have an entire trial on this issue.  This is exactly the sort of claim that must be exhausted.[29]

Moreover, the policy behind the IEP process makes it clear that this request should be denied.  An

IEP must be reviewed at least once a year to allow the school district to "determine whether the

annual goals for the child are being achieved" and to "revise[] the IEP as appropriate to address" any

changes to the child's needs.  20 U.S.C. § 1414(d)(4)(A).  A ruling that W.B. should remain at Fusion

indefinitely would frustrate this purpose.  The Court's role is not to displace this procedure,

regardless of W.B.'s current success at Fusion.

Nor does *Draper* support M.B.'s claim.  In that case, the administrative law judge gave the

parents two remedial options: one for placement in public school with additional services, and

another for private school for the remainder of his time in high school.  518 F.3d at 1283.  This

prospective placement was ordered to compensate Draper for the school district's past failure to

provide a FAPE.  *Id.*  While the order was being appealed, the parents chose the second option,

placing the child in private school, and the district court then affirmed the decision of the ALJ

ordering continued placement in private school.  *Id.*  W.B. cites this case, arguing that a district court

may order continued placement as an appropriate remedy.  However, it is distinguishable from the

instant request.  In that case, the ALJ had already ordered continued placement; the district court

merely reaffirmed that the parent's placement in private school was appropriate.  *Id.* at 1287.  Thus,

---

[29]*Cf. Struble v. Fallbrook Union High Sch. Dist.*, 2008 WL 8215426, at *15 (S.D. Cal. Aug. 29, 2008) (finding that the tuition reimbursement sought on appeal—as opposed to the prospective placement sought in the IDEA administrative proceedings—must be exhausted prior to suit); *A.D. v. New York City Bd. of Educ.*, 690 F. Supp. 2d 193, 216 (S.D.N.Y. 2010) (finding that plaintiffs had not exhausted their administrative remedies on a claim for tuition reimbursement for a period after the IEP at issue had expired). *But see D.M. v. Seattle Sch. Dist.*, 170 F. Supp. 3d 1328 (W.D. Wash. 2016) (not requiring exhaustion to grant reimbursement for a second-year, substantially similar IEP).

*Draper* does not support W.B.'s request for continued placement. As such, W.B.'s request for continued placement at Fusion should be dismissed for failure to exhaust.[30]

### 6.    Transportation Costs

Finally, M.B. seeks reimbursement for transportation costs to and from Fusion. Transportation is a "related service" under the IDEA when it is "required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(26)(A). This can include "[t]ravel to and from school and between schools." 34 C.F.R. § 300.34(c)(16)(i). The SEHO denied M.B.'s request, stating that she had failed to include the actual cost per mile. AR 43. However, in the conference prior to the hearing, the SEHO stated that she "use[s] the rate set by the Texas Comptroller for mileage reimbursement." AR 3312. M.B. provided the number of miles traveled each day, and used this rate to determine the amount of compensation. Tr. 379–80; AR 1507. This was sufficient to show the cost, and there was no need to show the actual cost.

GISD argues that transportation is only required where the child has a disability-related need for special transportation. Dkt. No. 49 at 14. It cites to *Malehorn v. Hill City Sch. Dist.*, 987 F. Supp. 772 (D.S.D. 1997) and *McNair v. Oak Hills Local Sch. Dist.*, 872 F.2d 153 (6th Cir. 1989), arguing that W.B. had not shown that transportation was required under the Act. However, each of these cases dealt with the extent that a school needed to provide the transportation for the student, as opposed to reimbursement for the parents' travel. In fact, in *Malehorn*, the court granted the parents mileage reimbursement. 987 F. Supp. at 783. Moreover, other courts have granted the same relief. *See, e.g.*, *M.M. v. Lafayette Sch. Dist.*, 2016 WL 4013790, at *6 (N.D. Cal. July 27, 2016)

---

[30]Of course, M.B.'s stay-put notice is a different question, as previously addressed. Because the SEHO found that Fusion was an appropriate placement, and this Court recommends affirming that decision, W.B. is entitled to stay-put at Fusion during the pendency of the appeals process.

(granting transportation costs for travel to and from therapy and instructional sessions); *Dist. of Columbia v. Masucci*, 13 F. Supp. 3d 33, 44-45 (D.D.C. 2014) (ordering reimbursement of transportation costs to and from school).  The Court finds that M.B. should be granted reimbursement for transportation costs to and from Fusion.

**B.  Attorney's Fees**

When she filed this action M.B. was only seeking to recover attorney's fees under 20 U.S.C. § 1415.  This provision provides that "[i]n any action or proceeding brought under [the IDEA], the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B(i)(I).  Under IDEA, "a prevailing party is one that attains a remedy that both (1) alters the legal relationship between the school district and the handicapped child and (2) fosters the purposes of the IDEA." *S.H. v. Plano Indep. Sch. Dist.*, 487 F. App'x 850, 860 (5th Cir. 2012) (quoting *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998)).  A plaintiff must also "attain some judicial imprimatur on a material alteration of the legal relationship," which is satisfied by a favorable decision by the administrative hearing officer.  *Id.* (quoting *El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 422 (5th Cir. 2009)).  However, "[a] finding that a party is a prevailing party only makes him *eligible* to receive attorneys' fees under the IDEA; it does *not automatically entitle* him to recover the full amount that he spent on legal representation."  *Gary G. v. El Paso Indep. Sch. Dist.*, 632 F.3d 201, 208 (5th Cir. 2011) (quoting Jason D.W., 158 F.3d at 209)),

GISD concedes that M.B. is the prevailing party, but opposes M.B.'s request on three grounds.  First, GISD argues that attorney's fees are precluded under §§ 1415(i)(3), prohibiting an award of attorney's fees where the parents were not substantially justified in rejecting a settlement

offer that is more favorable than the SEHO's award, and the parents unreasonably protracted the

final resolution. Second, GISD contends that M.B. only partially prevailed, and that the fees should

therefore be reduced. Alternatively, GISD contends that the fees should be reduced because the rates

are unreasonable. The Court will address each argument in turn.

### 1. Settlement Offer

A court may not award attorney's fees incurred subsequent to a written offer of settlement

where: (1) the offer is made more than ten days prior to the administrative hearing, (2) the offer is

not accepted within ten days, and (3) "the relief finally obtained by the parents is not more favorable

to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(D)(i). Even so, an award may

still be permitted when the parents were "substantially justified in rejecting the settlement offer."

*Id.* § 1415(i)(3)(E). Further, in cases where subsequent attorney's fees are barred, the court may still

award fees incurred prior to the offer of settlement. *S.H.*, 487 F. App'x at 860. However, the court

must reduce the fees awarded where the parent "unreasonably protracted the final resolution of the

controversy." *Id.* (quoting § 1415(i)(3)(F)(i)). GISD contends that (1) GISD's settlement offer was

more favorable, (2) M.B. was not substantially justified in rejecting the settlement offer, and (3)

M.B. unreasonably protracted the litigation.

GISD claims that it made three settlement offers, each of which were more favorable than

the SEHO's award. The first offer, made on December 19, 2016, offered private placement at Fusion

for the Spring 2017 term and the 2017-2018 school year, P.E. services, up to $5000 ABA services,[31]

---

[31]M.B. points out that the offer to provide $5,000 in ABA services was also included in the settlement agreement from April 8, 2016. Dkt. No. 38-10.

transportation costs, an IEE and Assistive Technology evaluation, and $15,000 in attorney's fees.[32]

Dkt. Nos. 39-2, 39-3. GISD then offered, on January 5, 2017, $45,000 for education/related services (unquantified) and $52,000 in attorney's fees. Dkt. No. 39-4. Finally, on January 9, 2017, GISD again offered $45,000 for education/related services and $20,000 in attorney's fees. Dkt. No. 39-5. As noted above, the SEHO granted M.B. reimbursement for the 2016-2017 school year at Fusion in the amount of $38,000, P.E. costs ($1200 for the year), $2,200 for a private psychological assesssment, and counseling for one hour per week. AR 44-45. Because the total awarded by the SEHO was $42,275, GISD contends that the settlement offers were more favorable.

However, M.B. was substantially justified in rejecting the settlement offers.[33] On the first offer, though the dollar amount offered was more than the SEHO's award, this is not a completely accurate picture of the relief awarded. GISD offered reimbursement for the spring semester of the 2016-2017 school year, but did not offer for the fall semester. Dkt. No. 38-10. M.B. sought, and the SEHO granted, reimbursement for the entire 2016-2017 school year. Thus, GISD did not offer the full relief granted by the SEHO. Moreover, the reason the offer was substantially higher than the award was, at least in part, due to the fact that GISD offered to fund the 2017-2018 school year. However, the SEHO (as discussed at length above) focused solely on the IEP for the 2016-2017 school year, and did not address any future years. There is no indication that M.B. might not still receive funding for the second year. In fact, pursuant to the stay-put provision, W.B. is entitled to

---

[32]The awards of attorney's fees should not be considered in this comparison, or as part of the substantial justification analysis. The SEHO is not permitted to award attorney's fees, and this very point is being considered by the Court. Thus, these amounts should not be taken into consideration.

[33]M.B. also points out that the second offer, made on January 5, was only open for four days, and therefore was not a valid offer. This Court need not address that argument, as it finds that M.B. was substantially justified in rejecting the settlement offers.

remain at Fusion for the 2017-2018 school year. Thus, the only true difference was the offer of transportation costs, which were denied by the SEHO. However, this Court is recommending granting transportation costs to M.B. Instead of looking at the dollar amount, it is more appropriate to look at the relief offered to determine whether M.B. was substantially justified. With regard to the first offer, she was substantially justified in holding out to receive reimbursement for the fall semester, particularly in light of the SEHO's ruling in her favor.

Similarly, M.B.'s rejections of the second and third offers were substantially justified. In each, GISD offered a flat $45,000, without specifying the costs that it would encompass. Again, the dollar amount was more than the dollar value of the SEHO's award. M.B. was substantially justified in rejecting the offers for two reasons. M.B. contends first that she was informed that she would have to agree that the placement in the RTF constitutes stay-put and FAPE, and second, that she would further be required to reimburse GISD should she re-enroll W.B. in GISD in the fall of 2017. Dkt. No. 38-10. Thus, GISD was once again offering to fund only the spring semester of the 2016-2017 school year. Moreover, an agreement that the RTF was the stay-put and FAPE for W.B. would have given M.B. less than she received in the SEHO's decision. Even though GISD's offers had a higher dollar value, M.B. was substantially justified in rejecting each of these offers and seeking reimbursement for the entire 2016-2017 school year, and related costs.

### 2. Partial Success

GISD also argues that, though M.B. was the prevailing party, her fees should be reduced because she only partially prevailed. GISD points to *Gary G. v. El Paso Indep. Sch. Dist.* in support of this argument, noting that the district court in that case reduced the fees awarded on the basis of challenges to the school's provision of FAPE that were ultimately rejected. *See* 632 F.3d at 205.

In that case, *Gary G.* lost on his claim for compensation for one of the three challenged school years, and was awarded a lesser amount of compensatory hours than requested. *Id.* Even so, the hours were only reduced by one-third. *Id.* GISD contends that M.B. lost on several arguments relating to allegedly deficient procedures, failure to provide dyslexia services, and for transportation costs.

Essentially, GISD attempts to turn this into a numbers game, arguing that M.B. only prevailed on three of the fifteen issues originally brought. However, GISD does this (1) by including arguments that were dropped prior to the hearing and before there was significant work on these issues, and (2) by putting forth each argument regarding GISD's failure to provide FAPE as an individual issue. First, a number of claims, including M.B.'s claims under the ADA and § 504 were dismissed or released early in the proceedings. In fact, M.B. narrowed the relief sought and the arguments presented at the hearing to: (1) whether the school provided W.B. a FAPE, which included drafting appropriate present levels of academic achievement and functional performance (PFAAFPs), tracking W.B.'s progress, provision of dyslexia services, and provision of necessary behavioral supports; (2) whether the school identified W.B. with dysgraphia and autism;[34] (3) whether the school followed the procedural requirements set out in IDEA, including non-predetermination of the IEP, provision of Prior Written Notice, and provision of IEP progress reports;(4) whether Fusion was an appropriate placement; and (5) whether W.B. was entitled to transportation expenses and related costs.

M.B. ultimately lost on all three claims that the IEP was procedurally deficient, and several of the proffered substantive deficiencies. Similarly, the SEHO found that the school's failure to

---

[34]M.B. dropped the argument regarding identification of autism during the due process hearing.

identify W.B. with dysgraphia "did not, in itself, result in the denial of FAPE." AR 42. However, the SEHO found that GISD had failed to provide a FAPE to W.B. and that M.B. was entitled to reimbursement for tuition at Fusion, which were by far the main issues at the hearing. Moreover, though M.B. did not prevail on the transportation issue at the administrative level, this was in error, and (assuming this recommendation is adopted), M.B. will have prevailed on this issue. This means that of the five arguments GISD identifies, M.B. prevailed on three. She ultimately prevailed on the main issue, and obtained nearly all of the relief sought, regardless of the arguments that were rejected to reach this decision. In *Gary G.*, the fees were reduced due to the SEHO's finding as to an entire year, not on the basis of individual contentions. 632 F.3d at 205. Here, the arguments on which M.B. did not prevail were intertwined with the denial of the FAPE, and therefore, it is not appropriate to reduce the award.

### 3.    Reasonableness of the Fees

Finally, GISD objects to the attorney's fees sought by M.B. on the basis that (1) the fees for Sonja Kerr, Andrew Cuddy, and Jason Sterne are excessive, and (2) the hours charged were excessive.[35] On the first issue, GISD objects to the rates of Sonja Kerr and Andrew Cuddy (at $400 per hour) and Jason Sterne (at $550 per hour). In support, GISD relies on the State Bar of Texas Hourly Rate Report for 2015, which shows that the median rate for the Austin-Round Rock area for school law attorneys was $300 per hour. Dkt. No. 49 at 20. However, M.B. points out that the report lists rates for attorneys with 21-25 years of experience in this area at $350 per hour. Thus, the $400 hourly rates for Sonja Kerr, who has thirty years of experience, and Andrew Cuddy, with

---

[35]GISD does not object to the rates billed for Elizabeth Angelone (at $275 per hour), Idris Motiwala, Devin Fletcher , or Fernando Salcedo (at $250 per hour),or Candace Kinser or Lisa Gregg (at $125 per hour).

twenty-one years of experience, are in the reasonable range for the Austin-Round Rock area.[36]  With regard to Jason Sterne's hourly rate, he solely worked on the federal case, and not the administrative hearing. Dkt. No. 38-16 at 5,   The fees sought in the summary judgment motion relate only to the administrative hearing (Dkt. No. 38 at 24; Dkt. No. 38-17), and thus, the question of the reasonableness of Sterne's fees is not yet before this Court.

Second, GISD challenges "(1) entries for unspecified work, (2) entries for excessive internal conferences/meetings/emails between attorneys and paralegals, and (3) entries for work on issues that were unsuccessful," and contends they should be eliminated or reduced.  Notably, GISD fails to point out any of these entries.  It is not the duty of the Court to go through the record line-by-line to determine which fees GISD objects to.  *McClure v. Mexia Indep. Sch. Dist.*, 750 F.2d 396, 405 (5th Cir. 1985) (stating that the party objecting should "present specific objections to the allowance sought and advance the reasons for  a denial or reduction").  Rather, in a motion for summary judgment on this issue, GISD is required to state its objections with specificity.  It has failed to do so.  Accordingly, M.B. is entitled to summary judgment on her request for attorney's fees, in the amount of $108,744.51, as she was the prevailing party in the administrative hearing.

## C.    Related Motions

The parties filed motions related to the two dispositive motions: (1) Defendant's Motion to Compel Examination (Dkt. No. 28); (2) Defendant's Motion to Extend Scheduling Order Deadlines

---

[36]Interestingly, the summary sheet states that the fees and costs sought for the administrative hearing is $108,744.61.  *See* Dkt. No. 38-17; Dkt. No. 37-13 at 60.  However, this list does not include any fees for Jason Sterne.  Instead, this amount appears to go to the final fee petition, relating to costs expended in federal court.  See Dkt. No. 37-13 at 68. The only issue on summary judgment is the amount of attorney's fees for the administrative hearing.  Accordingly, the question of the reasonableness of Sterne's attorney's fees are not before the Court at this time.

(Dkt. No. 29); and (3) Plaintiff's Opposed Motion to Submit Additional Evidence (Dkt. No. 37). Essentially, each of these motions relates to the question of W.B.'s continued placement at Fusion. In the first, GISD seeks to compel an examination of W.B. to refute whether Fusion is appropriate for an indefinite time. The second motion seeks to extend the deadline for GISD to designate experts on the same question. Finally, most of the documents that W.B. seeks leave to submit are also relate to the same issue.[37] As the Court has found that M.B. has not exhausted her administrative remedies regarding W.B.'s continued placement all of these motions should be denied.

## III. RECOMMENDATION

In accordance with the foregoing discussion, the Court **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Plaintiff's Motion for Judgment on the Administrative Record and for Partial Summary Judgment (Dkt. No. 38) and Defendant's Motion for Summary Judgment (Dkt. No. 39). In particular, the Court **RECOMMENDS** that the District Court **AFFIRM** the Special Education Hearing Officer's findings that:

(1)    GISD failed to provide a FAPE;
(2)    Fusion is an appropriate placement;
(3)    W.B. is entitled to tuition reimbursement for the 2016-2017 school year; and
(4)    W.B. is entitled to costs for outside P.E. services for the 2016-2017 school year, reimbursement of $2,200 for the private psychological assessment, and counseling costs at $125 per week for the remainder of the 2016-2017 school year.

However, the Court **RECOMMENDS** that the District Court **REVERSE** the Special Education Hearing Officer's finding on the issue of reimbursement for transportation costs for the 2016-2017 school year, and award M.B. $12,668.40 for those costs.

---

[37]GISD does not object to the admission of Exhibits F, G, H, I, J, K, L, M, N, O as these exhibits do not relate to the above issue. Therefore, the motion should be granted with respect to these exhibits.

Further, the undersigned **RECOMMENDS** that the District Court **DENY** Plaintiff's request for continued placement at Fusion for failure to exhaust administrative remedies. Finally, the undersigned **RECOMMENDS** that the District Court **GRANT** attorney's fees and costs for the administrative proceeding in the amount of $108,744.51.

Additionally, the Court **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Compel Examination (Dkt. No. 28) and Defendant's Motion to Extend Scheduling Order Deadlines (Dkt. No. 29). The Court **FURTHER RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Plaintiff's Motion to Submit Additional Evidence (Dkt. No. 37), and **DENY** the motion with respect to Exhibits A-E, and **GRANT** it with respect to Exhibits F-O.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 27th day of April, 2018.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE